```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

BETANIA D'AQUINO,


                    Plaintiff,                    MEMORANDUM AND ORDER

     -against-                                    20-CV-3947 (KAM)


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

----------------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Betania D'Aquino ("Plaintiff"), appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding her not disabled prior to June 1, 2019 within the meaning of the Social Security Act (the "Act") and thus not entitled to disability insurance benefits ("benefits") under Title II of the Act. Presently before the Court are Plaintiff's motion for judgment on the pleadings, vacating the final decision of the Commissioner and remanding for further proceedings, (ECF No. 15, Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl. Mem.")), and Defendant's cross-motion for judgment on the pleadings, (ECF No. 16, Defendant's Memorandum of Law in Support of Defendant's Cross-

1

Motion for Judgment on the Pleadings ("Def. Mem.")).  For the reasons stated below, Plaintiff's motion is respectfully DENIED, and the Commissioner's cross-motion is GRANTED.

## Background

On November 3, 2016, Plaintiff filed applications for benefits, alleging disability since August 10, 2016.  (ECF No. 14, Administrative Transcript ("Tr."), at 167-68, 190.)  Plaintiff claimed that she was disabled due to a neck and back injury, depression, anxiety, and bladder surgery.  (Tr. at 82.)  Her applications were partially accepted on August 9, 2019, finding Plaintiff disabled starting from July 25, 2019, the day she became a person of "advanced age", that is, greater than 55 years old, pursuant to 20 CFR § 404.1563(e).  (*Id*. at 9-29.)

Administrative Law Judge Alexander Borre (the "ALJ") held a hearing on July 25, 2019, during which Plaintiff appeared with her attorney to testify.  (*Id*. at 72-90.)  Plaintiff was represented by attorney Charles Wieser.  (*Id*. at 45.)  Michael Dorval, a vocational expert, also appeared at the hearing and offered opinion testimony.  (*Id*.)  In a decision dated August 9, 2019, the ALJ determined that Plaintiff was disabled beginning July 25, 2019, but not before turning 55 years old.  (*Id*. at 9-29.)  On July 27, 2020, the Appeals Council denied review of the ALJ's decision, rendering it the final decision of the Commissioner.  (*Id*. at 1-4.)

Plaintiff initiated the instant action on August 25, 2020, represented by new counsel, Harold Skovronsky. (ECF No. 1, Complaint.) On August 26, 2020, the Court issued a scheduling order. (ECF No. 5, Scheduling Order.) On December 6, 2021, Defendant filed the Administrative Transcript. (Tr.)

On December 6, 2021, Plaintiff filed her notice of motion and memorandum of law in support of her motion for judgment on the pleadings. (ECF No. 15, Pl. Mem.) On December 6, 2021, Defendant filed its cross-motion and memorandum of law in support of Defendant's cross-motion for judgment on the pleadings and in opposition to Plaintiff's motion. (ECF No. 16, Def. Mem.)[1]

### **Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. §§ 405(g), 1383(c)(3). "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal

---

[1] Neither party filed replies to the initial cross motions for judgment on the pleadings.

3

quotation marks and citation omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)) (internal quotation marks omitted). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g). Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citation omitted). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

To receive disability benefits, a claimant must be "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a), (d). A claimant is disabled under the Act when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

4

§ 423(d)(1)(A). The impairment must be of "such severity" that the claimant is unable to do his or her previous work or engage in any other kind of substantial gainful work. *Id.* § 423(d)(2)(A). "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (alterations in original)).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether the claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. This process can be summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in [her] prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess*, 537 F.3d at 120 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

5

During this five-step process, the Commissioner must consider whether the combined effect of any such impairment would be of sufficient severity to establish eligibility for Social Security benefits.  20 C.F.R. § 404.1523(c).  Further, if the Commissioner does find a combination of impairments, the combined impact of the impairments, including those that are not severe (as defined by the regulations), will be considered in the determination process.  20 C.F.R. § 416.945(a)(2).  At steps one through four of the sequential five-step framework, the claimant bears the "general burden of proving . . . disability." *Burgess*, 537 F.3d at 128.  At step five, the burden shifts from the claimant to the Commissioner, requiring that the Commissioner show that, in light of the claimant's residual functional capacity, age, education, and work experience, the claimant is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

## Discussion

I. **The ALJ's Disability Determination**

Using the five-step sequential process described above, the ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since August 10, 2016, the alleged onset date.  (Tr. at 21.)

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the

6

cervical and lumbar spine, a depressive disorder, and a generalized anxiety disorder. (*Id.*) The ALJ found that Plaintiff's impairments "significantly limit [her] ability to perform basic work activities." (*Id.*)

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that equaled the severity of listed impairments under 20 C.F.R. Part 404 Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (*Id.*) Specifically, the ALJ considered the criteria of Listings 1.04, 11.14, 12.04, and 12.06. (*Id.*) First, the ALJ determined that Plaintiff's mental impairments, considered individually and in combination, did not amount in a total severity of the impairments set forth in Listing Section 12.04 (Depressive, Bipolar and Related Disorders). (*Id.* at 21–22.) According to the ALJ, Plaintiff's mental impairments failed to meet the "B" and "C" criteria of the listing. (*Id.*) To satisfy the "B" criteria, Plaintiff's mental impairments must result in at least one extreme or two marked limitations in the following areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 21.) Based on his review of Plaintiff's medical records, the ALJ found that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace. (*Id.*) The ALJ concluded that,

7

otherwise, Plaintiff had only a mild limitation in the other three out of four areas of mental functioning. (*Id.*)

The ALJ first determined that Plaintiff had a mild limitation in understanding, remembering, or applying information, based on his review of the treatment records which lacked complaints by Plaintiff of memory issues and the more recent records indicating Plaintiff had generally intact memory. (*Id.*) Second, the ALJ determined that Plaintiff had a mild limitation in interacting with others, reasoning that although Plaintiff had reported feeling anxious around others, Plaintiff demonstrated the ability to relate adequately to treatment providers and for the most part reported positive relationships and regular contact with her children. (*Id.* at 21-22.) As for the third area of mental functioning, concentrating, persisting, or maintaining pace, the ALJ found a moderate limitation. (*Id.* at 22.) The ALJ noted that although Plaintiff demonstrated moderately impaired attention and concentration early in the relevant period, she demonstrated intact concentration and attention since beginning mental health treatment. (*Id.*) Finally, with respect to the fourth area of mental functioning, the ALJ determined that Plaintiff had a mild limitation in adapting or managing oneself, having observed that much of Plaintiff's recent depression and anxiety was related to "situational stressors" as Plaintiff adjusted to her daughter leaving for college and having to become more independent. (*Id.*)

8

The ALJ concluded that Plaintiff's mental impairments did not satisfy the "C" criteria of Listing Sections 12.04 and 12.06, reasoning that there is no evidence that Plaintiff has a serious and persistent mental disorder of two or more years with evidence of both: (1) mental health treatment, mental health therapy, psychosocial support, or a highly structured setting that is ongoing and that diminishes the symptoms and signs of a mental disorder; and (2) a minimal capacity to adapt to changes to her environment or to demands that are not already part of her daily life. (*Id.*)

At step four of the five-step sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, except that she is limited to simple, routine tasks. (*Id.* at 23.) In determining that Plaintiff had the RFC to perform light work, the ALJ reasoned that although Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, her subjective statements about the intensity, persistence, and limiting effects of these symptoms were not fully supported by the record. (*Id.*)

With regards to Plaintiff's physical impairments, the ALJ determined that Plaintiff's testimony that she is limited in her ability to sit, stand, walk, lift and carry due to pain is not supported by her treatment records, which indicate that Plaintiff engaged in only periodic monitoring of her spinal condition and

9

conservative treatment, and appear to have had any treatment since 2017. (*Id.*) The Plaintiff's treatment records, moreover, reveal mild findings overall, as her physical examination revealed a full range of motion of the cervical spine. (*Id.* at 24.) In January 2017, although Plaintiff received two epidural steroid injections, she did not appear to follow up with any treatment. (*Id.*) Ultimately, the ALJ found an inconsistency between the level of limitation alleged by Plaintiff and Plaintiff's medical records and conservative treatment history. (*Id.*) As for Plaintiff's complaints of bowel incontinence, the ALJ concluded Plaintiff's complaints were infrequent and non-recent, and she did not appear to have sought treatment from a gastroenterologist, nor did she mention her bowel incontinence to her primary care provider. (*Id.*)

As for Plaintiff's mental impairments, the ALJ found that the clinical observations and mental status examination findings provided for in the record do not support a finding of limitations beyond an RFC finding of light work. (*Id.* at 25.) Mental status examination findings from 2017 demonstrated that Plaintiff was capable of personal hygiene and adequately oriented and demonstrated normal speech. (*Id.*) More recent records from 2018 show that Plaintiff's condition remained stable, and her condition was noted to demonstrate some improvement. (*Id.*)

The ALJ also considered Plaintiff's self-reported activities of daily living. Given that Plaintiff reported on her

10

ability to make her morning coffee and a simple meal, drive herself about locally, and shop around twice per week usually accompanied by one of her children, the ALJ concluded that these self-reported activities of daily living, coupled with other evidence in the record, generally indicated that Plaintiff is capable of performing light work. (*Id.*)

The ALJ weighed all opinions within the record, including those of Dr. Benjamin Kropsky, Dr. Christopher Flach, and Dr. Florentine Schrieber. (*Id.* at 26.)[2] The ALJ gave partial weight to psychological consultative examiner Dr. Kropsky's March 2017 opinion that Plaintiff is moderately limited in her ability to walk, lift, and carry, reasoning that the accompanying examination report was generally consistent with the level of limitation opined by Dr. Kropsky and other clinical findings documented within the treatment records. (*Id.*)

The ALJ afforded great weight to psychological consultative examiner Dr. Flanch's February 2017 opinion that the

---

[2] Though the record contained extensive treatment records from Plaintiff's previous visits with medical providers and the Commissioner attempted to subpoena various providers, the record contains no treating physician opinions regarding Plaintiff's functional abilities or limitations. (Tr. at 251-604.) The ALJ made efforts to procure reports and records from Plaintiff's past medical providers and noted those who failed to respond. (*Id.* at 216-225.) At the hearing, the ALJ asked Plaintiff's counsel whether there were any outstanding medical records, and Plaintiff's counsel stated that the record was complete. (*Id.* at 48-49.) As the ALJ made "reasonable efforts to obtain" reports and records from Plaintiff's and considered all of the medical evidence that was received, as summarized in this opinion, the Court finds that the ALJ adequately developed the record. *Devora v. Barnhart*, 205 F. Supp. 2d 164, 174 (S.D.N.Y. 2002).

11

Plaintiff's mental health symptoms moderately interfere with her functionality. (*Id*.)  The ALJ found that Dr. Flanch's opinion was consistent with the findings documented within his report as well as with the evidence of the record, which includes Plaintiff's complaints of ongoing mental health symptoms and mental status examinations which generally were found to be within normal limits. (*Id*.)  The ALJ afforded little weight to Dr. Schrieber's opinion that the claimant is unable to work due to unpredictable episodes of encopresis[3], reasoning that Plaintiff has not been diagnosed with encopresis and no related objective clinical findings exist. (*Id.*)

Thus, the ALJ found that Plaintiff has the RFC to perform light work.  (*Id.* at 27.)  Using this RFC, the ALJ concluded that Plaintiff had been unable to perform any past relevant work since August 10, 2016, because her past relevant work was as a food service worker and as a laundry worker, required medium exertional levels.  (*Id.*)

At step five of the sequential evaluation process, the ALJ found that, based on Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant

---

[3] Encopresis, sometimes called fecal incontinence or soiling, is the repeated passing of stool (usually involuntarily) into clothing.  Mayo Clinic, *Encopresis*, WWW.MAYOCLINIC.ORG/, https://www.mayoclinic.org/diseases-conditions/encopresis/symptoms-causes/syc 20354494#:~:text=Encopresis%20(en%2Dko%2DPREE,(usually%20involuntarily)%20into%20clothing (last visited Oct. 18, 2022.)

12

numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 404.1569, 404.1569a). (*Id.* at 28.) The ALJ took the vocational expert's testimony into account. (*Id.*) The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as cafeteria attendant, garment sorter, and parking attendant. (*Id.*) Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, prior to July 25, 2019, as defined in 20 C.F.R. § 404.1520(g). (*Id.*)

The ALJ, however, found that beginning on July 25, 2019, Plaintiff's age moved her into the person of advanced age category. (*Id.*) Considering the Plaintiff's advanced age, education, work experience, and RFC, the ALJ determined that there are no jobs that exist in significant numbers in the national economy that Plaintiff could perform pursuant to 20 CFR §§ 404.1560(c) and 404.1566. (*Id.*) Accordingly, the ALJ found that Plaintiff was disabled beginning July 25, 2019 under sections 216(i) and 223(d) of the Act. (*Id.* at 28-29.)

**II. The ALJ's Consideration of Dr. Kropsky's Opinions**

The Court finds that the ALJ properly considered Dr. Kropsky's consultative examination report. Dr. Kropsky examined the Plaintiff in March 2017. (*Id.* at 26.) Dr. Kropsky's examination report documented findings of Plaintiff's slow and slightly unsteady gait, the ability to move about the examination

13

room unaided, and limited ranges of motion of the neck, lower back, and right shoulder. (*Id.* at 26, 356-58.) In accordance with his examination of Plaintiff, Dr. Kropsky opined that Plaintiff suffered moderate limitations for walking, lifting, and carrying, and a moderate-to-severe limitation for climbing stairs and squatting. (*Id.* at 359.) Although the ALJ noted that Dr. Kropsky's examination findings were generally consistent with other clinical findings, the ALJ also recognized that most of the treatment records documented a normal gait. (*Id.* at 26, 267, 288, 295, 302, 308, 323-27, 329-30, 332-38, 340, 394.) Dr. Kropsky's opinion was only partially supported by the record, so the ALJ properly gave it partial weight.

Contrary to Plaintiff's contentions, the Court finds that Dr. Kropsky's assessment is both supportive of the ALJ's findings and constitutes evidence that Plaintiff can meet the demands of light work. Plaintiff argues that Dr. Kropsky was overly vague when he found "moderate" limitations in her ability to lift and carry, and that when a doctor uses vague terms such as "mild" and "moderate" in characterizing a claimant's restrictions, the ALJ cannot reasonably draw inferences as to the claimant's RFC. (ECF No. 15, Pl. Mem. at 16); *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008); *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000). In *Curry*, the consulting physician opined that some of plaintiff's limitations were "moderate" and others "mild," and

14

the Second Circuit found this opinion overly vague as to render it useless in determining the RFC. 209 F.3d at 123.

The medical opinion in *Curry*, however, was the only evidence supporting the ALJ's conclusion, *id.*, which is not the case here. *Martin v. Comm'r of Soc. Sec.*, 19-CV-406, 2020 WL 3547042, at *2 (W.D.N.Y. June 30, 2020) (finding *Curry* to be inapplicable where the consultative examiner conducts a thorough examination and explains the basis for the opinion). Indeed, terms such as "mild" and "moderate" are not automatically deemed to be vague "if the examiner conducts a thorough examination and explains the basis for the opinion," and an ALJ may rely on the examination and findings despite the use of such terminology. *Myrick v. Comm'r of Soc. Sec*, No. 1:18-CV-1310-TPK, 2019 WL 6654151, at *5 (W.D.N.Y. Dec. 5, 2019); *see also Quintana v. Berryhill*, No. 1:18-CV-00561 (KHP), 2019 WL 1254663, at *17 (S.D.N.Y. Mar. 19, 2019) ("[C]ourts in this district have held that a medical source's use of the terms 'mild' or 'moderate' to describe a claimant's impairments does not automatically render their opinion vague as long as the opinion contains objective medical findings to support their conclusion."). Finally, as the Commissioner correctly points out, "moderate" limitations have generally been found to be consistent with the physical demands of light work. *See Gerry v. Berryhill*, No. 17-CV- 7371 (JS), 2019 WL 955157, at *3 (E.D.N.Y. Feb. 26, 2019) ("Courts within this Circuit have held that opinions of

15

similar 'mild to moderate limitations' support RFC findings that claimants are capable of 'light work.'") (collecting cases).

Even if Dr. Kropsky's opinion of "moderate" limitations precludes light work as Plaintiff proposes, the ALJ is the ultimate decision-maker and evaluates the totality of the circumstances, when it comes to RFC determination. See 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Indeed, the ALJ afforded only partial weight to Dr. Kropsky's opinion as it was not entirely consistent with the treatment record evidence that failed to show significant decline in Plaintiff's back and neck condition. Contrary to Plaintiff's assertions, the ALJ is not required to cite to specific medical opinion evidence to support his RFC finding. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (finding that the ALJ may determine the RFC without the "support of at least some medical opinion concerning [the RFC's] limitations"). In *Hilsdorf v. Comm'r of Soc. Sec.*, the court held that an ALJ who makes an RFC determination without supporting expert medical opinion improperly substitutes his own opinion for that of a physician, and thus commits legal error. 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010).

In the instant case, however, the ALJ considered the expert medical opinion of Dr. Flanch in addition to that of Dr.

16

Kropsky. Furthermore, the ALJ has not substituted his own opinion for that of Dr. Kropsky; rather, he afforded Dr. Kropsky's opinion partial weight. Pursuant to the regulations, 20 C.F.R. §§ 404.1520b(c)(3)(v), 404.1545(a), 404.1546(c), the ALJ thoroughly discussed the medical and non-medical evidence supporting the RFC finding. (Tr. at 22-26.) Although the ALJ did not explicitly follow any individual medical opinion in his RFC finding, the ALJ need not adopt an opinion in its entirety; rather, he may weigh all the evidence and adopt the limitations supported by the evidence. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

### III. The ALJ Properly Considered Plaintiff's Daily Activities When Making His RFC Finding

The Court concludes that, contrary to Plaintiff's contentions, the ALJ properly considered Plaintiff's daily activities when making his RFC finding. It was proper for the ALJ to note that Plaintiff had the ability to perform regular activities of daily living (including making coffee, preparing meals for herself, driving locally, and shopping in the company of her children), had received only conservative medical treatment, and there was a gap in treatment since 2017, despite Plaintiff

17

reporting difficulty with household chores. "When determining a claimant's RFC, the ALJ . . . is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citations omitted). The regulations explicitly direct the ALJ to consider a claimant's activities of daily living but also the nature of the claimant's medication and treatment. 20 C.F.R. § 404.1529(c)(3)(i), (iv), (v). Thus, Plaintiff's "conservative treatment regimen" was properly relied upon "as additional evidence supporting the ALJ's determination rather than as compelling evidence sufficient in itself to overcome an otherwise valid medical opinion." *Pesco v. Kijakazi*, 2021 WL 4463228, at *3 n.3 (E.D.N.Y. Sept. 29, 2021) (quoting *Netter v. Astrue*, 272 F. App'x 54, 56 (2d Cir. 2008)).

With respect to her daily activities, Plaintiff contends that "[her] activities – performed at times, and at a pace, and in a manner of plaintiff's choosing – do not bespeak a capacity for sustained competitive employment" (ECF No. 15, Pl. Mem. at 13) and argues that minimal activities should not serve as a basis for denial of a disability claim unless "[her] conduct truly showed that [she] is capable of working." *Nelson v. Bowen*, 882 F.2d 45, 49 (2d Cir. 1989). The ALJ, however, did not rely solely upon Plaintiff's physical activity or household chores to conclude that

18

Plaintiff could perform light work; rather, this evidence demonstrated inconsistencies in the record about Plaintiff's abilities that the ALJ was required to resolve. *Cruz v. Comm'r of Soc. Sec.*, 2018 WL 3628253, at *8 (W.D.N.Y. Jul. 31, 2018) ("The issue is not whether Plaintiff's limited ability to undertake normal daily activities demonstrates [his] ability to work. Rather, the issue is whether the ALJ properly discounted [Plaintiff's] testimony regarding [his] symptoms to the extent that it is inconsistent with other evidence." (citation omitted; alterations original)). As discussed above, the ALJ identified medical opinions and other evidence that contradicted Plaintiff's testimony and found that Plaintiff's limitations were not as severe as she claimed. *See, e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that the claimant's daily activities detracted from his allegations of disability); *Conetta v. Berryhill*, 365 F. Supp. 3d 383, 402, 406 (S.D.N.Y. 2019) (ALJ properly discounted opinions of treating physicians and plaintiff's testimony based on evidence of daily activities); *Arbello v. Comm'r of Soc. Sec.*, 2019 WL 1384094, at *11 (E.D.N.Y. Mar. 27, 2019) (ALJ properly discounted physician's opinion based on evidence of daily activities). The Court finds that the ALJ properly chose to resolve the inconsistencies between the medical opinions and Plaintiff's testimony. *See Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order) ("[I]t is the sole

19

responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record.").

## CONCLUSION

For the reasons set forth above, the Court respectfully **DENIES** Plaintiff's motion for judgment on the pleadings and **GRANTS** the Commissioner's cross-motion for judgment on the pleadings. The Clerk of Court is respectfully directed to enter judgment in favor of the Commissioner and close this case.

**SO ORDERED.**

DATED:  October 18, 2022
        Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge